UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John F. Bracaglia, Jr., Esq.
Savo, Schalk, Gillespie, O'Grodnick & Fisher
77 North Bridge Street
Somerville, NJ 08876
(908) 526-0707
Attorney for Debtors

| | | |
|---|---|---|
| In Re: | Case No.: | 15-22520 |
| Keith O. Wilkins and Alexandra J. Wilkins | Judge: | MBK |
| | Chapter: | 13 |

## CHAPTER 13 DEBTOR'S CERTIFICATION IN OPPOSITION

The debtor in this case opposes the following **(choose one):**

1.  ☐ Motion for Relief from the Automatic Stay filed by _____ ,
    creditor,

    A hearing has been scheduled for _____ , at _____ .

    ☒ Motion to Dismiss filed by the Chapter 13 Trustee.

    A hearing has been scheduled for _____ 7/25/2017 _____ , at _9:00 a.m._ .

    ☐ Certification of Default filed by _____ ,

    I am requesting a hearing be scheduled on this matter.

2.  I oppose the above matter for the following reasons **(choose one):**

    ☐ Payments have been made in the amount of $ _____ , but have not
    been accounted for. Documentation in support is attached.

☐ Payments have not been made for the following reasons and debtor proposes

repayment as follows (explain your answer):

☒ Other (explain your answer):

Debtors were offered a loan modification. The modification was accepted and the agreement and supporting documents were signed by the debtors on 3/31/17 and overnighted to the lender. Attached are the loan modification documents.

3.  This certification is being made in an effort to resolve the issues raised in the certification of default or motion.

4.  I certify under penalty of perjury that the above is true.

Date: 7/17/17

Debtor's Signature

Date: 7/17/17

Debtor's Signature

**NOTES:**

1.  Under D.N.J. LBR 4001-1(b)(1), this form must be filed with the court and served on the Chapter 13 Trustee and creditor, if applicable not later than 7 days before the date of the hearing if filed in opposition to a Motion for Relief from the Automatic Stay or Chapter 13 Trustee's Motion to Dismiss.

2.  Under D.N.J. 4001-1 (b)(2), this form must be filed with the court and served on the Chapter 13 Trustee and creditor, if applicable not later than 14 days after the filing of a Certification of Default.

rev.8/1/15

## M&T Bank

March 28, 2017

KEITH WILKINS
ALEXANDRA WILKINS
89 MAIN STREET
METUCHEN NJ 08840
908-526-0707

Re:  Loan #   ;9784

Dear Mortgage Customer:

We would like to inform you that your application for a HAMP Modification Agreement
has been approved subject to the following:

> You are responsible for the fees and costs associated with the processing of the
> partial claim.  We have estimated these costs to be:

| | | | |
|---|---|---|---|
| Payments | 0 | @ | $0.00 |
| Late Charges | | | $0.00 |
| Other Fees | | | $0.00 |
| Corporate Advance | | | $0.00 |
| Total | | | $0.00 |
| Funds received | | | -$0.00 |
| Remaining balance | | | $0.00 |

> HUD will advance the monthly payments you are behind plus attorney fees in the
> amount of $66,410.45, this together with the above contribution will bring the
> account current.

> I have enclosed an interest free subordinate note and a subordinate mortgage to
> HUD for the 360 monthly payments, attorney fees and a principal balance
> reduction in the amount of $18,856.14 for a total of $85,266.59.  The documents
> need to be signed, notarized and returned for recording.  The subordinate
> mortgage becomes a lien on the property, however does not become due until the
> above referenced mortgage is paid in full and /or the property is sold.   To obtain a
> payoff statement you will need to contact Novad Management Consulting,
> at 1-877-622-8525.

**The executed documents are to be returned with the certified funds of $0.00 no later than 04/28/2017.** You are provided with an overnight return envelope for the documents and certified funds.

**The Bankruptcy Trustee must approve this workout and a copy of that approval must accompany the signed subordinate note and mortgage and be received by the date indicated above. Please DO NOT execute the attached documents until Bankruptcy Trustee approval is obtained.**

You will be responsible for keeping your loan current starting with the May 01, 2017 estimated payment of $3,601.43. **Until you receive a new payment coupon reflecting the changes, continue to make your monthly payment to: M&T Bank,   P. O. Box 840, Buffalo, NY  14240-0840, Attention:  Homeowner Assistance Center.**

In approximately 3-5 weeks after returning this set of documents you will receive additional documentation from us entitled "Loan Modification Agreement". These documents will complete the FHA HAMP agreement.

If you have any questions, please call your Homeowner's Assistance Representative at 1-800-724-1633.

Sincerely,


Homeowner Assistance Center
1-800-724-1633

_____

I _Keith Wilkins & Alexandra Wilkins_ understand and agree to comply with the aforementioned conditions outlined, concerning the acceptance of the Partial Claim for the property located at 89 MAIN STREET METUCHEN NJ 08840, loan number 0053669784

| | |
|---|---|
| _____  3/31/17 | _____ |
| Borrower            Date | Co-borrower          Date |



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

John F. Bracaglia, Jr., Esq.
Mauro, Savo, Camerino, Grant & Schalk, P.A.
77 North Bridge Street
Somerville, NJ  08876
  (908) 526-0707
  Attorneys for Debtors

Order Filed on August 25, 2016
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In Re: | Case No.:  15-22520 |
| Keith O. Wilkins and Alexandra J. Wilkins | Adv. No.: |
| Debtor. | Hearing Date:  8/23/2016 @ 9:00 a.m. |
| | Judge:  Kaplan |

### AMENDED
### ORDER APPROVING LOAN MODIFICATION AGREEMENT
### AND VOIDING JUDGMENT LIEN

The relief set forth on the following pages, numbered two (2) through  3  is
hereby **ORDERED**.

**DATED: August 25, 2016**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Page 2
Debtor:    Keith O. Wilkins and Alexandra J. Wilkins
Case No:   15-22520 MBK
Caption of Order: Order Approving Loan Modification Agreement and Voiding Judgment Lien

This matter having been opened to the Court upon the motion of debtors for an Order approving a loan modification agreement, and the Court having reviewed the pleadings submitted and appearing that due notice has been given, and it appearing that the said loan modification agreement is proper and in the best interest of the debtors and the estate, and for good cause being shown,

It is hereby ORDERED:

1.      Debtors' motion is hereby granted and the debtors are granted approval to enter into a permanent loan modification agreement with respect to the mortgage secured by the real property owned by the debtors at 89 Main Street, Metuchen, New Jersey 08840 dated March 25, 2011, in the original principal amount of $521,281.00.

2.      Upon receipt of an amended Proof of Claim, the Trustee may disburse the funds being reserved pursuant to this order to other creditors in accordance with the provisions of the confirmed plan;

3.      If post-petition arrears are capitalized in the loan modification, M&T Bank by Lakeview Loan Servicing, LLC shall file an amended post-petition claim within 30 days of the date of this Order.  Upon receipt of an amended post-petition claim, the Trustee may disburse the funds being reserved pursuant to this Order to other creditors in accordance with provision of the confirmed plan.

4.      The Chapter 13 Trustee shall suspend disbursements to M&T Bank c/o Lakeview Loan Servicing, LLC pending completion of the loan modification, and all money that would otherwise be paid to M&T Bank be held until the arrearage portion of the claim is

Page  3
Debtor:     Keith O. Wilkins and Alexandra J. Wilkins
Case No:    15-22520 MBK
Caption of Order:  Order Approving Loan Modification Agreement and Voiding Judgment Lien

amended to zero, or the claim is withdrawn, or the Trustee is notified that the modification

was not consummated;

5.      In the event the modification is not consummated and the Trustee has been

notified of same, any money that was held by the Trustee pending completion of the

modification shall then be paid to M&T Bank c/o Lakeview Loan Servicing, LLC.

6.      Upon receipt of the amended Proof of Claim, the Trustee may disburse the

funds being reserved pursuant to this order to other creditors in accordance with the

provisions of the confirmed plan; and

7.      Communication and/or negotiations between debtors and

mortgagees/mortgage servicers about loan modification shall not be deemed in violation of

the automatic stay; and any such communication or negotiation shall not be used by either

party against the other in any subsequent litigation.

8.      The debtors' motion to avoid judicial liens under 11 U.S.C. § 522(f) is hereby

granted, provided the debtors are granted a discharge in this Chapter 13 case or in a

succeeding Chapter 7 case in the event of conversion to Chapter 7 under Title 11 of the

United States Bankruptcy Code.


bmot.6255-001.Wilkins.revised.order.approving.8.18.16

# M&T Bank

March 28, 2017

KEITH WILKINS
ALEXANDRA WILKINS
89 MAIN ST
METUCHEN NJ 08840

Re:  Loan Number        ;9784

Dear Mortgage Customer(s):

We are pleased to enclose your loan modification documents.  In addition to the Loan Modification, the documents included in this package may include a Subordinate Note and Subordinate Mortgage/Deed of Trust, which is referenced on a separate letter.

This letter will explain what you have to do and is broken down by steps you have to complete.  As you finish each step, you can "check the box" next to the requirement so you will know it's done.

**IMPORTANT INFORMATION:**

We must receive these documents, properly signed and notarized by **April 28, 2017** in order for processing of your loan modification to continue.  If applicable, you must include **$0.00** as your contribution amount.

M & T Bank reserves the right to decline your loan modification, even after we receive these documents, if we determine there are title issues relating to your property that would negatively affect its lien priority.

If all requirements of the loan modification have been met, including receipt of required funds, M & T Bank will sign the loan modification documents where applicable, and send you a copy for your records.

It can take up to sixty (60) days for all of the changes associated with your modification to be completed. You will not receive a billing statement during this period.  Until you receive a statement that shows the changes, please continue to make your new monthly payment in the amount of **$3,601.43** and send to:

M & T Bank
P.O. Box 840
Buffalo, NY 14240-0840
Attention: Homeowner Assistance Center.

We have enclosed two (2) temporary payment coupons you can use to make your payments.

Revised 11.16.16

If you do not send in your monthly payments, M & T bank won't be able to apply any funds collected for your loan modification, such as late fees and returned check fees, until your loan is brought current.

## QUESTIONS ABOUT THIS LOAN MODIFICATION PACKAGE:

If you have any questions, please contact your SPOC representative at 1-800-724-1633.

Sincerely,


M&T Bank
Homeowner Assistance Center
Hours: Mon.-Thur. 8am-9pm, Friday 8am-5pm, Saturday 8am-12pm EST
Phone: 1-800-724-1633
Fax: 1-855-678-0866
5JJ

Prepared by:
-Justin Ellis
Vice President
Lakeview Loan Servicing, LLC
4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146

_____ [Space Above This Line For Recording Data] _____

FHA#          ·7195335
TAX ID BLOCK 160 LOT 28

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ('Agreement'), made this _____ , 20____
between **KEITH WILKINS AND ALEXANDRA WILKINS** ('Borrower(s)') and Lakeview
Loan Servicing, LLC ('Lender'), with an address of 4425 Ponce de Leon Blvd, 5th Floor, Coral
Gables, FL 33146, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed
(the 'Security Instrument'), and Timely Payment Rewards Rider, if any, dated March 25, 2011
and recorded in Book 14266 at Page 0883 in Instrument Number 201104080332 at County of
MIDDLESEX, State of NEW JERSEY and (2) the Note bearing the same date as, and secured
by, the Security Instrument, which covers the real and personal property described in the
Security Instrument and defined therein as the 'Property', located at **89 MAIN STREET
METUCHEN NJ 08840**, and more particularly described as follows:

-All that tract or parcel of land as shown on Schedule A which is annexed hereto and
incorporated herein as Exhibit A-

Said Mortgage was assigned by Mortgage Electronic Registration Systems, Inc. to Bank of
America, N.A., by Assignment dated September 26, 2012 and recorded in the Middlesex County
Clerk's Office on October 1, 2012 in Book 01090, Page 0037.

Said Mortgage was further assigned by Bank of America, N.A. to Lakeview Loan Servicing, LLC,
by Assignment dated August 2, 2013 and recorded in the Middlesex County Clerk's Office on
September 26, 2013 in Book 01119, Page 0470.

KEITH O WILKINS;                                                                            Initials

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179    06/06 (rev. 01/09)

With the original principal balance of U.S. $521,281.00, with pre-modification principal of U.S. $471,290.89, and with capitalized amount of U.S. $0.00.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of first day of May, 2017 the amount payable under the Note and the Security Instrument (the 'Unpaid Principal Balance') is U.S. $452,434.75 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance and continuing thereafter until the Maturity Date (as hereinafter defined), on the first day of April, 2047, at the yearly rate of 4.375% from first day of April, 2017. Borrower promises to pay monthly payments of principal and interest in the amount of U.S $2,258.94 beginning on the first day of May, 2017 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full. The new Maturity Date will be April 01, 2047.

   Borrower's payment schedule for the modified Loan is as follows for the term of 30 years:

   | Interest Rate Change | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
   |---|---|---|---|---|---|
   | 1 | 4.375% | first day of April, 2017 | $2,258.94 | first day of May, 2017 | 360 |

   If on April 01, 2047 (the 'Maturity Date'), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security

KEITH O WILKINS;

Initials

Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified; and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower

Initials

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the 'Funds') to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called 'Escrow Items.' Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase 'covenant and agreement' is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower

Initials

as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments. Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

_____ (Seal)

**KEITH WILKINS**

State of _____

County of _____

On the _3/_ day of _MARCH_ in the year _2//_ before me, the undersigned, personally appeared **KEITH WILKINS** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

_____

Notary Public

My Commission expires:_____

JOHN F. BRACAGLIA, JR.
AN ATTORNEY AT LAW
OF THE STATE OF
NEW JERSEY

_____ (Seal)

**ALEXANDRA WILKINS**

State of _____

County of _____

On the _3/_ day of _MARCH_ in the year _2//_ before me, the undersigned, personally appeared **ALEXANDRA WILKINS** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

_____

Notary Public

My Commission expires:_____

JOHN F. BRACAGLIA, JR.
AN ATTORNEY AT LAW
OF THE STATE OF
NEW JERSEY

KEITH O WILKINS;

Initials

FHA Case No. **352-7195335**

## SUBORDINATE NOTE

*March 3,* 2017

Property: **89 MAIN STREET METUCHEN NJ 08840**

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Eighty five thousand two hundred sixty six dollars and 59/100 (U.S. $85,266.59)**, to the order of Lender.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

On **April 01, 2047** or, if earlier, when the first of the following events occurs:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated or

(iii) The Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The property is not occupied by the purchaser as his or her principal residence.

*Page 1 of 2*

(B) Place

Payment shall be made at the Office of the Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 2488 E 81st St., Suite 700, Tulsa, OK 74137 or any such other place as Lender may designate in writing by notice to Borrower

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, *is* also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Note.

KEITH WILKINS

ALEXANDRA WILKINS

*Page 2 of 2*

Prepared by:
Justin Ellis
Lakeview Loan Servicing, LLC
475 Crosspoint Parkway
Getzville, NY 14068

<u>Record and Return To:</u>

_____

_____

_____

_____[Space Above This Line for Recording Data]_____

FHA Case No.    -7195335
Loan No. xxxxxx9784

## SUBORDINATE MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on _____, 2017.
The Mortgagor is **KEITH WILKINS AND ALEXANDRA WILKINS** whose address is **89 MAIN STREET METUCHEN NJ 08840** ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, and whose address is 2488 E 81st Street, Suite 700, Tulsa, OK 74137 ("Lender"). Borrower owes Lender the principal sum of **Eighty five thousand two hundred sixty six Dollars and 59/100 (U.S. $85,266.59).** This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **April 01, 2047.**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph *1* to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale the following described property located in County of **MIDDLESEX** and State of **NEW JERSEY** which has the address of: **89 MAIN STREET METUCHEN NJ 08840** as more fully described in the legal property description attached hereto as Schedule A/Exhibit A.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS

1. Payment of Principal. Borrower shall pay when due the principal of the debt evidenced by the Note.

2. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage. grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 2488 E 81st Street, Suite 700, Tulsa, OK 74137 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. Governing Law; Sever ability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be

given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be sever able.

*6.* Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 7 of the Subordinate Note, the Secretary may invoke the non judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 9 9.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Properly as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available *to* a Lender under this paragraph or applicable law.

This deed of trust/mortgage is subordinate only to the deed of trust/mortgage between KEITH WILKINS AND ALEXANDRA WILKINS [borrower's name], mortgagors and Mortgage Electronic Registration System, Inc. as nominee for Huntingdon Valley Bank, as Lender, dated 03/25/2011, recorded 04/08/2011 in Book 14266 at Page 0883, Instrument Number 201104080332 in the amount of $521,281.00 as assigned and/or modified, if applicable.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(r) executed by Borrower and recorded with it.

Witness by

_____
John F Bracaglia, Jr
Printed Name

_____
KEITH WILKINS

_____

Printed Name

Witness by

_____
John F Bracaglia, Jr.
Printed Name

_____
ALEXANDRA WILKINS

_____

Printed Name

_____[Space Below This Line for Acknowledgements]_____

State of ___*NJ*___ )
                    )ss.:
County of *Somerset* )

On the 3/day of *March* in the year *2017* before me, the undersigned, personally appeared <u>KEITH WILKINS</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)whose name(s) is(are)subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s)on the instrument, the individual(s),or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public BRACAGLIA, JR.
AN ATTORNEY AT LAW
OF THE STATE OF
NEW JERSEY

State of ___*NJ*___ )
                    )ss.:
County of *Somerset* )

On the 3/ day of *March* in the year *2017* before me, the undersigned, personally appeared <u>ALEXANDRA WILKINS,</u> personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)whose name(s) is(are)subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s)on the instrument, the individual(s),or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public
JOHN F. BRACAGLIA, JR.
AN ATTORNEY AT LAW
OF THE STATE OF
NEW JERSEY

## Schedule A / Exhibit A

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Metuchen, County of Middlesex, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point in the westerly right-of-way line of Main Street, 66 foot right-of-way, said point being located one hundred sixty-nine and forty-six hundredths feet (169.46') northerly from the intersection of the aforesaid westerly sideline of Main Street with the northerly right-of-way line of Juniper Street, (formerly Maple Street), 60 foot right-of-way, said point of beginning also being described in Deed Book 3906, page 322, and from said point of beginning, running:

1. Along the aforesaid westerly sideline of Main Street, north five degrees eighteen minutes, thirty seconds east a distance of fifty and zero hundredths feet (50.00 feet) to an iron pipe found; thence
2. North eighty-two degrees, fifty-six minutes, zero seconds west a distance of one hundred three and sixty-six hundredths feet (103.66') to a point; thence
3. South five degrees eighteen minutes, thirty seconds west a distance of fifty and zero hundredths feet (50.00') to a point; thence
4. South eighty-two degrees, fifty-six minutes, zero seconds east a distance of one hundred three and sixty-six hundredths feet (103.66') to the point and place of BEGINNING.

The above described lands also being known and designated as part of lands of R. Leis in Block 160-A as shown on a certain map entitled, "Map of Property Ernst and Ostergard", which map was filed in the office of the Middlesex County Clerk on November 20, 1928 as Map No. 1250, File 696.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 28 in Block 160 on the Borough of Metuchen Tax Map.